UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Carter Cowen Lathan, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:23-cv-06054-TMC |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| City of Greenville, City of Greenville Police Department, and Officer Dillon M. Whitlock in his official and individual Capacities, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Carter Cowen Lathan filed this action against Defendants in South Carolina state court, seeking relief for alleged injuries Plaintiff sustained when Defendant Officer Dillon M. Whitlock ("Whitlock") arrested him on June 22, 2022.  (ECF No. 1-1).  Plaintiff asserts constitutional claims against Whitlock pursuant to 42 U.S.C. § 1983, *id*. at 11–13, as well as numerous state law claims against Whitlock, *id*. at 13–16.  As to Defendant City of Greenville ("City") and Defendant City of Greenville Police Department ("CGPD"), Plaintiff asserts a state law claim for negligent hiring, retention and lack of supervision.  *Id*. at 16–18.  Defendants removed the action to federal court, (ECF No. 1), and, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this matter was referred to a magistrate judge for pretrial handling.

Defendants subsequently filed a motion for summary judgment, (ECF No. 29); Plaintiff filed a response in opposition, (ECF No. 34), and Defendants filed a reply, (ECF No. 36).  Plaintiff, in turn, filed a cross-motion for summary judgment on all claims except the negligent hiring,

retention and lack of supervision claim against the City and CGPD. (ECF No. 33). Defendants submitted a response in opposition to Plaintiff's motion. (ECF No. 35).

Now before the court is the magistrate judge's Report and Recommendation ("Report"), issued after the magistrate judge conducted a hearing on these motions, recommending that the court grant Defendants' motion for summary judgment as to Plaintiff's § 1983 claim based on qualified immunity and as to Plaintiff's claim against the City and CGPD to the extent the complaint can be construed as asserting a § 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (ECF No. 46 at 13, 15). The Report recommends further that the court decline to exercise supplemental jurisdiction of Plaintiff's remaining claims, all of which arise under state law. *Id*. at 16. In light of these recommendations, the Report then recommends that the court deny Plaintiff's cross-motion for summary judgment. *Id*. at 16. Plaintiff filed objections to the Report, (ECF No. 47), to which Defendants replied, (ECF No. 48).

In light of the thorough briefing submitted by the parties, as well as the voluminous materials presented to the court, the court has determined that the issues before it have been adequately covered and a second hearing on these motions is unnecessary for the court to render a decision. *See* Local Rule of Civil Procedure 7.08 (D.S.C.). For the reasons that follow, the court grants Defendants' motion for summary judgment (ECF No. 29), denies Plaintiff's cross-motion for summary judgment (ECF No. 33), declines to exercise supplemental jurisdiction over Plaintiff's state law claims, *see* 28 U.S.C. § 1367(c)(3), and remands Plaintiff's state law claims to state court for further proceedings.

## I. Background

### A. Facts

In the early evening hours of June 22, 2022, the CGPD received a 911 call from a resident of an apartment complex who was frightened because a man unknown to her was violently banging on her door for "five straight minutes" and approached her door twice. (ECF No. 29-5). The caller described the suspect as a middle-aged white man wearing a royal blue work shirt. *Id*. Whitlock, a police officer employed by CGPD, responded to the call. Whitlock's body camera captured the entire incident and Defendants submitted that footage in support of their motion for summary judgment. (ECF No. 29-9 (D. Ex. 3)). The apartment complex parking lot was full of parked vehicles when Whitlock arrived. D. Ex #3 at 00:15. Whitlock noticed Plaintiff wearing a blue shirt and tan khaki shorts and standing by a truck parked in a handicapped space and told him that CGPD had received a report that "somebody in a blue work shirt was maybe knocking on peoples' doors." (D. Ex. #3 at 00:52). Plaintiff denied having seen any such person. (D. Ex. #3 at 00:58). Whitlock then went to the apartment of the 911 caller who stated that she was frightened when a man she did not recognize "kept knocking [on her door] for like five minutes straight" and appeared to be "really angry." (D. Ex. #3 at 3:38). She told Whitlock the man had "blondish white hair," was probably in his forties, and was wearing a royal blue shirt and either tan pants or tan shorts. (D. Ex. #3 at 3:42).

Whitlock returned to the parking lot where Plaintiff was still standing near the same truck and asked to speak to him. Plaintiff indicated he was on the phone with his mother but placed his phone on the top of the truck's rear side panel and turned to face Whitlock. After assuring Plaintiff that he was not in any trouble, Whitlock repeated that he had received "a call that somebody was like disturbing the neighbors" and advised that the complainant provided "a description of a white male that matches your description, okay?" (D. Ex. #3 at 6:05). Plaintiff stated that he had "been

3

out here the whole time." (D. Ex. #3 at 6:23). Plaintiff indicated that he did not live at the apartments but that his girlfriend lived down the stairs in apartment number 3. (D. Ex. #3 at 6:40).

Plaintiff generally fit the description given by the 911 caller and Whitlock "had only observed one subject in the area that matched the description." (ECF No. 29-6 at 4). Accordingly, Whitlock believed there was an objectively reasonable suspicion to conclude that Plaintiff had violated a Greenville City ordinance prohibiting "[m]olesting, disturbing or following persons." *See* Greenville City Code § 24-216.[1]

Whitlock then asked to see Plaintiff's identification. (D. Ex. #3 at 6:50). Plaintiff said that he "didn't have any [identification]," picked up his phone, and began walking away from Whitlock towards the apartment complex. (D. Ex. #3 at 6:52). When Plaintiff stated that he "didn't have to do it," Whitlock followed him and responded "yes, you do . . . where are you going?" Plaintiff immediately began running towards the apartment building, and Whitlock pursued him. (D. Ex. #3 at 6:58). Plaintiff entered an outside stairwell and began descending; Whitlock unholstered his taser before reaching the stairwell himself and discharged it at Plaintiff who was just beginning to descend the initial flight of stairs. When his first attempt missed, Whitlock discharged his taser a second time and hit Plaintiff as he approached the landing in the stairwell. (D. Ex. 3 at 7:04 – 7:07). Plaintiff fell onto the landing, striking his head and suffering various lacerations or abrasions on his face. After stopping Plaintiff with the second taser discharge, Whitlock descended to the landing, placed Plaintiff on his stomach and handcuffed his hands behind his back. (D. Ex.

---

[1] This provision of the city code provides in relevant part as follows:
   It shall be unlawful for any person to:

   Willfully or intentionally interfere with, disturb or in any way molest any person in the city . . . upon privately owned premises where such person may have entered without permission or as a trespasser[.]

Greenville City Code § 24-32(a)(1).

4

#3 at 7:10 – 7:45). Whitlock did not announce a verbal warning before using his taser; however, only about ten to twelve seconds elapsed from the time Plaintiff began running until the moment Whitlock deployed his taser. (D. Ex. #3 at 6:58 – 7:05).

Whitlock indicated in his post-action incident report that he had not yet frisked Plaintiff at the time Plaintiff fled, and, therefore, he did not know whether Plaintiff was armed. (ECF No. 29-6 at 6). Whitlock testified that at that moment he believed Plaintiff posed a potential risk of danger to himself and others (ECF No. 33-8 at 1) as "[h]e could have been accessing a firearm; he could have broken into somebody's apartment, . . . [a]nd he would have had . . . an advantageous situation on me to where he could have ambushed me." (ECF No. 33-6 at 1). Whitlock was also concerned that Plaintiff was under the influence of drugs at the time. (ECF No. 29-6 at 6). Plaintiff had a sizable head start on Whitlock, and Whitlock decided to use force to stop Plaintiff from fleeing and put him into custody. (ECF Nos. 29-6 at 7; 33-12). Whitlock testified that he tried to deploy his taser to stop Plaintiff "at the top of the stairs, which is a flat surface." (ECF No. 29-14 at 2). Whitlock also concluded that if he failed to stop Plaintiff before Plaintiff reached the stairwell, he would lose sight of Plaintiff (ECF No. 33-6 at 1) who could have had a weapon "stashed around the corner" (ECF No. 33-8 at 1). Having missed on his first attempt, Whitlock fired his taser a second time in an effort to stop Plaintiff before he rounded the corner to another set of descending stairs. (ECF No. 33-8 at 1). Ultimately, Whitlock testified, he used his taser because Plaintiff was being non-compliant and was fleeing an investigatory stop. (ECF No. 33-12).

Plaintiff was subsequently transported to a hospital for examination and treatment. While Plaintiff was receiving medical care, Whitlock returned to the apartment complex and showed the 911 caller a picture of Plaintiff. She positively identified Plaintiff as the individual who first banged on her door; however, she also advised that during the time Whitlock was engaged with

5

Plaintiff, a different individual—also a white male wearing a blue shirt with a white pattern—beat on her door and yelled through the door. (ECF No. 29-6 at 5). Accordingly, following Plaintiff's release from the hospital later that evening, Whitlock issued a citation to Plaintiff for interfering with a police officer, *see* Greenville City Code § 24-216[2], rather than for violating the "molesting and disturbing" ordinance. The CGPD conducted an internal investigation of the incident. At each stage of the investigation, the reviewing official concluded that Whitlock's use of force was justified in accordance with CGPD policy as the "subject displayed active resistance when he fled from Whitlock as he was attempting to conduct a thorough investigation." (ECF No. 29-11 at 7).[3]

### B. Claims

Plaintiff asserts a federal claim against Whitlock pursuant to 42 U.S.C. § 1983, alleging that Whitlock violated his Fourth Amendment rights by arresting him without probable cause and using constitutionally excessive force in effectuating the arrest. (ECF No. 1-1 at 12). Plaintiff asserts six additional claims against Whitlock, all arising under South Carolina state law: gross negligence and recklessness in the arrest of Plaintiff which caused Plaintiff to suffer injuries, *id*.

---

[2] In relevant part, this ordinance provides that "[i]t shall be unlawful for any person within the corporate limits of the city to assault or by any act, physical or verbal, to resist any law enforcement officer in the discharge of his duty with the intent to hinder or impede such officer in the discharge of his duty." Greenville City Code § 24-216(a).

[3] Section 6.0 of the CGPD General Order, entitled "Force Continuum," provides that the use of force must be "reasonable and necessary to fulfill lawful objectives" and that "its proper application requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the subject poses an Immediate Danger to the safety of officers or other persons, and whether he/she is actively resisting arrest or attempting to evade arrest by flight." (ECF No. 29-19 at 8 (citing *Graham v. Connor*)). More specifically, the CGPD policy states that the use of a taser can be a justified response to "Active Resistance" by a suspect, which is defined as: "Physical actions to prevent being taken into custody, *which present a reasonable and immediate risk of causing injury to the officer. subject or another person*. This includes . . . fleeing where a tackle would be necessary . . .." *Id*. at 9 (emphasis in original).

6

at 13; assault "by engaging in conduct which placed Plaintiff in a reasonable fear of bodily harm," *id*. at 14; battery "by inflicting upon [Plaintiff's person] inappropriate and unwanted physical touching," *id*.; false imprisonment by "intentionally and unlawfully restrain[ing] Plaintiff," *id*. at 14–15; intentional infliction of emotional distress based on conduct allegedly "so extreme and outrageous as to exceed all possible bounds of decency," *id*. at 15; and negligence *per se* by violating S.C. Code Ann. § 16-3-600 and S.C. Code Ann. § 16-3-910—South Carolina criminal statutes, *id*. at 15–16.

Plaintiff asserts one cause of action—arising under state law—against the CGPD and the City for "gross negligence, willful and wanton negligent hiring, retention and lack of supervision," claiming the CGPD knew or should have known Whitlock "would likely commit the acts against Plaintiff" and breached its "duty to control" Whitlock; that the CGPD failed "to properly review and/or investigate Defendant Whitlock prior to hiring"; that the CGPD failed "to have in place proper and adequate policies, procedures and protocols for law enforcement officers executing arrests" or failed to enforce such policies; and that the CGPD failed to adequately train Whitlock. (ECF No. 1-1 at 16–18).

After removing this action to this court, Defendants filed an answer raising qualified immunity as an affirmative defense to Plaintiff's § 1983 claim and the South Carolina Tort Claims Act, S.C. Code §15-78-10 *et seq*., as an affirmative defense to Plaintiff's state law causes of action. (ECF No. 4).

As noted, Defendants filed a motion for summary judgment that is presently before the court. (ECF No. 29). In it, Defendants argue that Whitlock had probable cause to arrest the plaintiff and is entitled to qualified immunity on the claim that excessive force was used to make the arrest, and the plaintiff failed to plead a municipal liability claim against the City and GPD.

7

Plaintiff thereafter filed a cross-motion for summary judgment as to all claims against Whitlock because, in his estimation, it is undisputed that the Whitlock used excessive force and acted with "malice with the intent to harm Plaintiff." (ECF No. 33).

The court has reviewed the parties' briefing and the record and adopts the magistrate judge's thorough recitation of the procedural history and factual background as set forth in the Report, (ECF No. 46 at 1–5), to which neither party specifically objects.

## II. Report of the Magistrate Judge

First, the magistrate judge determined that Whitlock had a reasonable suspicion to conduct an investigatory stop of Plaintiff. (ECF No. 46 at 8). The magistrate judge explained in pertinent part that

> Fourth Amendment . . . protections apply to "brief investigatory stops . . . that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) . . . [A] police officer needs only a reasonable, articulable, and particularized suspicion that someone is engaged in criminal activity to justify such brief interactions. *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997) . . . "[A]n officer who stops and detains a person for investigative questioning 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Sprinkle*, 106 F.3d at 617 (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)) . . . . Reasonable suspicion is not a high bar and "is a less demanding standard than probable cause." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) . . . .
>
> . . .
>
> Here, the undersigned finds that Ofc. Whitlock had a reasonable suspicion to stop the plaintiff briefly during his investigation. The 911 caller described the suspect as a man wearing a blue shirt and light pants or shorts, and the only person Ofc. Whitlock saw nearby was the plaintiff, who was wearing a blue shirt and light shorts. The plaintiff's argument that he did not fit the complete description is unavailing, particularly in light of his failure to provide identification to challenge it. . . . Because Ofc. Whitlock had reasonable suspicion that the plaintiff had committed a crime, he was permitted to briefly detain the plaintiff and request identifying information.

*Id*. at 7–8.

Next, the magistrate judge concluded that circumstances then developed to provide Whitlock with probable cause to arrest Plaintiff:

> As part of an investigatory stop, a police officer may ask a suspect to provide personal identifying information. *See Tucker v. City of Greenwood*, No. 8:19-cv-02078-JD, 2021 WL 689096, at *5 n.4 (D.S.C. Feb. 23, 2021) ("The Plaintiff's arrest resulting from his failure to provide personal identifying information after an investigatory stop in the grocery store is consistent with investigatory stop laws." (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 187–88 (2004) and *Brown v. Texas*, 443 U.S. 47, 52 (1979)). Also, if an individual flees from a police officer, this "reasonable suspicion" for brief detainment can become probable cause for arrest. *United States v. Mitchell*, 58 F. App'x 14, 15–16 (4th Cir. 2003) (citing *United States v. Martinez–Gonzalez*, 686 F.2d 93, 100 (2d Cir.1982)).
>
> . . . Because Ofc. Whitlock had reasonable suspicion that the plaintiff had committed a crime, he was permitted to briefly detain the plaintiff and request identifying information. When the plaintiff refused to provide any information and fled after Ofc. Whitlock told him that he met the 911 caller's description, Ofc. Whitlock had probable cause to arrest him. *See Mitchell*, 58 F. App'x at 15–16.

*Id*. at 8.

Next, in addressing whether Whitlock enjoys qualified immunity on Plaintiff's excessive force claim, the magistrate judge concluded that the constitutional right allegedly violated by Whitlock was not clearly established:

> In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id*. (citations and internal quotation marks omitted) . . .. "Although the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citing *Anderson*, 483 U.S. at 640 (1987); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)).

*Id*. at 10.

The Report correctly recognizes that

9

> a court in this district must first look to case law from the Supreme Court of the United States, the Court of Appeals for the Fourth Circuit, and the Supreme Court of South Carolina, and in the absence of binding authority, the court must next consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 543 (4th Cir. 2017) . . .. "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks, citations, and alterations omitted); *see also Omeish v. Kincaid*, 86 F.4th 546, 555 (4th Cir. 2023) (noting that the Supreme Court has emphasized the need to identify case law addressing similar circumstances in excessive force cases).

*Id.* at 10–11.

Applying these principles, the magistrate judge defined the right at issue as follows:

> The court must first define the right at issue in the context of the specific factual situation that confronted Ofc. Whitlock. Ofc. Whitlock, who did not have backup, tased the plaintiff while he was running down concrete stairs in an apartment complex. The plaintiff, after being told that he was a suspect in Ofc. Whitlock's investigation of a nonviolent disturbance crime, was actively fleeing in the direction of his girlfriend's apartment. There were no other people seen outside the apartments. In light of these facts, the court defines the pertinent inquiry as follows: Was it clearly established on June 22, [2022], that a police officer, without backup, who has a reasonable suspicion that someone committed a non-violent disturbance crime, cannot tase that person as he runs away? For the reasons that follow, the undersigned cannot say that a reasonable officer would understand that doing so violates the Constitution.

*Id.* at 11.

Plaintiff suggests that in light of *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, it was clearly established on June 22, 2022, that Whitlock was not permitted to deploy his taser against Plaintiff under the circumstances of this case. *See* 810 F.3d 892, 896 (4th Cir. 2016); (ECF No. 34 at 10 (Plaintiff's memorandum in opposition to Defendants' motion for summary judgment)). As explained in the Report, the magistrate judge disagreed:

> "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "This right is obviously greater when the suspect is resisting arrest and

10

> refusing to comply with the officer's orders." *Yarborough v. Montgomery*, 554 F. Supp. 2d 611, 617 (D.S.C. 2008). In the case relied upon by the plaintiff, the Fourth Circuit made clear that an officer may not tase a suspect to effect an arrest of a non-violent suspect who is offering only passive resistance. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 906 (4th Cir. 2016). However, the undersigned has not found, and counsel represented at the hearing that they have not found, any settled, controlling authority from before June [2022] that an officer without backup may not tase a suspect fleeing from an officer's investigation of a non-violent disturbance crime.

*Id.* at 11–12.

> However, the underlying facts in *Armstrong* do not "squarely govern" the case at hand. *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.") (internal quotation marks omitted). In *Armstrong*, officers tased a mentally ill man, who was subject to a civil commitment order and only offered passive, non-violent resistance to the officers' attempt to seize him. 810 F.3d at 896. When the officers tried to seize Armstrong, he sat down and wrapped himself around a sign post and refused to move. *Id.* Rather than speaking further with Armstrong, who was encircled by three police officers and two security guards, the officers announced that they would tase him if he did not let go of the post. *Id.* at 897. After Armstrong refused, the officers then tased him five separate times during a period of two minutes.

*Id.* at 12.

The magistrate judge determined that "*Armstrong* does not put the lawfulness of Ofc. Whitlock's conduct 'beyond debate,'" such that "'every reasonable official would understand that what [Whitlock] was doing was unlawful.'" (ECF No. 46 at 13 (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018); *see al-Kidd*, 563 U.S. at 741). The Report explained that "the primary differences from Armstrong are that Ofc. Whitlock was alone (there were three officers and two security guards in Armstrong); Ofc. Whitlock was investigating a crime (Armstrong was only subject to a civil commitment order); the plaintiff fled toward apartments (Armstrong was stationary and surrounded); and Ofc. Whitlock deployed his taser only two times, and his first attempt did not connect with the plaintiff (Armstrong was tased five separate times). These differences are significant in the ultimate analysis." (ECF No. 46 at 13 (citing *Wesby*, 583 U.S. at 63 ("It is not

11

enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."))).

Finally, the magistrate judge concluded that to the extent Plaintiff seeks to establish municipal liability under § 1983 against the City or the CGPD, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Defendants are entitled to summary judgment because the plaintiff did not plead a *Monell* claim in his complaint. (ECF No. 46 at 15). The Report notes that "[t]he plaintiff's motion for summary judgment (doc. 33) is the first time the plaintiff has attempted to present a *Monell* claim, but a plaintiff cannot raise new claims in a motion for summary judgment or a response to a motion for summary judgment." *Id.* (citing *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008)).

Accordingly, the Report recommends that the court grant the defendants' motion for summary judgment (ECF No. 29) as to Plaintiff's federal claims; deny Plaintiff's motion for summary judgment (ECF No. 33); decline to exercise supplemental jurisdiction over the remaining state law claims; and remand these claims to the Greenville County Court of Common Pleas. (ECF No. 46 at 16).

### III.  Legal Standards

#### A.  Summary Judgment

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

        B. Review of the Report

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (*quoting Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017); *see also Elijah*, 66 F.4th at 460 n.3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

### IV. Discussion

Plaintiff raises a number of objections to the Report. (ECF No. 47). The court addresses each of them below, applying a *de novo* standard of review to the portions of the Report to which Plaintiff objects.

1. First, Plaintiff objects to the magistrate judge's conclusion that Whitlock had a reasonable suspicion to conduct an investigatory stop of Plaintiff. (ECF No. 47 at 1). Plaintiff argues that Whitlock did not have an articulable and particularized suspicion that he was engaged in criminal activity because he only "partially matched" the complainant's description. Although Plaintiff's clothes matched those described by the complainant, Plaintiff was only thirty-years old (not in his forties as estimated by the complainant) and has "medium to dark brown hair" (rather than "blondish white" hair as suggested by the complainant). *Id*. at 1–2. Thus, Plaintiff argues that based on Plaintiff's clothing alone, Whitlock did not have a sufficient basis to stop him. The court disagrees. Plaintiff not only generally matched the description given by the victim, but he was also the only person in the area Whitlock saw fitting the description. The court agrees with the magistrate judge that Whitlock had a sufficient basis to briefly stop Plaintiff to investigate and ask for his identification.

2. Plaintiff next objects to the magistrate judge's conclusion that an individual's flight from a police officer during a brief investigatory stop can give the officer probable cause for arrest. *Id*. at 2. The court disagrees. *See, e.g.*, *United States v. Mitchell*, 58 F. App'x 14, 15–16 (4th Cir. 2003) (officers had a reasonable, articulable suspicion to conduct *Terry* stop and then Mitchell provided probable cause for his arrest by attempting to flee police). The court also disagrees with Plaintiff's argument that in this case, his flight did not provide probable cause because he had not attempted to flee during his first encounter with Whitlock. (ECF No. 47 at 2). The court finds this fact to be of minimal significance. Circumstances were different during the second encounter,

where Whitlock told Plaintiff that he matched the description of the individual causing the disturbance and that he needed to see Plaintiff's identification. Like the magistrate judge, the court concludes that Plaintiff's refusal to provide any identification coupled with his flight from Whitlock while he was questioning Plaintiff provided Whitlock with probable cause to arrest Plaintiff for creating a disturbance in violation of Greenville City Code § 24-32(a)(1). *See Mitchell*, 58 F. App'x at 15–16 (suspect's flight from *Terry* stop created probable cause); *Tucker v. City of Greenwood*, No. 8:19-cv-02078-JD, 2021 WL 689096, at *5 n.4 (D.S.C. Feb. 23, 2021) ("Plaintiff's arrest resulting from his failure to provide personal identifying information after an investigatory stop . . . is consistent with investigatory stop laws."). Accordingly, this objection provides no basis for setting aside the probable cause determination as set for in the Report.

3. Next, Plaintiff objects "to [the magistrate judge's] finding that Plaintiff was engaged in active resistance" to Whitlock during the stop and eventual arrest. (ECF No. 47 at 3). Plaintiff contends the magistrate judge erroneously concluded that he was actively resisting Whitlock (thereby giving Whitlock a basis for the using his taser) for two reasons: (1) Plaintiff believed he was not lawfully detained and that he was free to leave; and (2) it was not reasonable for Whitlock to believe Plaintiff posed an immediate threat as he was only suspected of committing a minor, non-violent crime, and had displayed no aggression or violence toward Whitlock. (ECF No. 47 at 3–4).

The court must overrule this objection because the Report, in fact, contains no such finding. Plaintiff's objection highlights factors that are relevant to whether an officer used excessive force to make an arrest in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (relevant factors include "the severity of the crime at issue," whether the "suspect poses an immediate threat" to the officer or others, and whether the suspect "is actively resisting arrest

or *attempting to evade arrest by flight*" (emphasis added)).  The Report, however, correctly notes that the qualified immunity analysis consists of two prongs— (1) whether as constitutional right was actually violated and (2) whether that right was clearly established at the time of such violation—and that the court is permitted, in its discretion, to address either prong first.  (ECF No. 46 at 9).  The magistrate judge addressed the clearly established prong first and, once he determined the right in question was not clearly established, did not need to address whether Whitlock violated Plaintiff's Fourth Amendment rights.  Furthermore, even if the magistrate judge had made a finding that Plaintiff was actively resisting by fleeing the investigatory stop, such a finding would afford the court no basis for rejecting the Report.  Indeed, as noted below, it was not clearly established in June 2022 that tasing a suspected misdemeanant, even a nonviolent one, when he fled a stop would be constitutionally excessive force.

    4. Finally, Plaintiff objects to the magistrate judge's conclusion that Whitlock is entitled to qualified immunity.  (ECF No. 47 at 4–6).  As reflected in the court's summary of the Report set forth above, the magistrate judge engaged in a thorough analysis of whether the right allegedly violated by Whitlock was clearly established as of June 22, 2022.  (ECF No. 46 at 10–13).  The magistrate judge, taking care to define the precise right at issue with sufficient specificity and "not at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), defined the question at issue in this case as follows: "was it clearly established on June 22, [2022], that a police officer, without backup, who has a reasonable suspicion that someone committed a non-violent disturbance crime, cannot tase that person as he runs away?"  (ECF No. 46 at 11).  Plaintiff does not object to

17

the magistrate judge's framing of the right in question, and the court concludes the Report appropriately states the right in question.[4]

As noted previously, the Report considered at length the facts and circumstances in *Armstrong*, 810 F.3d at 869 – 97, a case where a taser was unconstitutionally deployed against a stationary, nonviolent individual who was not only *not fleeing* police but was surrounded by them. The magistrate judge concluded that *Armstrong* did not put the lawfulness of Whitlock's conduct beyond debate, noting, among other things that Plaintiff here fled the investigatory stop toward the nearby staircase whereas the subject in *Armstrong* was clinging to a post and surrounded by multiple law enforcement officers and security guards. (ECF No. 46 at 13). Plaintiff does not object specifically to the magistrate judge's conclusion that Armstrong did not place beyond debate the unlawfulness of Whitlock's conduct. The court agrees with the magistrate judge's conclusion.

In his objections, Plaintiff does not cite any decisions that relate to whether the specific right in question was clearly established in June 2022. Rather, Plaintiff generally states that he had a clearly established right "to be free from excessive force and unreasonable seizures as he did not pose a reasonable, articulable immediate risk of causing injury to Whitlock, himself or others." (ECF No. 47 at 6). But such a generalized statement without authority does not help establish the contours of law in June 2022. The court concludes that under *Armstrong* and a few other decisions issued by the Fourth Circuit, it was clearly established in June 2022 only that serious, non-lethal force such as a taser was excessive when used against a nonviolent, misdemeanor suspect who was neither posing a risk of danger *nor fleeing* from an investigatory stop. In 2020, the Fourth Circuit

---

[4] The court would define the specific right in these terms: Was it clearly established on June 22, 2022, that a police officer, without backup, who has a reasonable suspicion that a person committed a non-violent disturbance crime, cannot tase that person when he refuses to provide identification and flees from an investigative stop? This modification does not alter the analysis of the clearly established prong in any material way.

explained that "[s]ince at least 1994, when we decided *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994), it has been clear that serious physical force . . . is constitutionally excessive when used against an individual suspected, at most, of a minor crime, who is unarmed, *and who does not attempt to flee* or physically attack the officer." *Livingston v. Kehagias*, 803 F. App'x 673, 684 (4th Cir. 2020) (emphasis added); *see id.* at 683–84 (concluding initial use of a taser and pepper spray against a suspected misdemeanant who was not resisting or fleeing was constitutionally excessive); *Smith v. Ray*, 781 F.3d 95, 102 (4th Cir. 2015) (constitutionally excessive to throw misdemeanor suspect to the ground where suspect did not attempt to flee and only passively resisted).[5]

The court overrules Plaintiff's generalized objection and concludes that the law was not clearly established that Whitlock could not tase Plaintiff as he fled from an investigatory stop after refusing to provide identification.

## V. Conclusion

Having conducted a *de novo* review of the Report and Plaintiff's objections, the court, for the reasons set forth above, **ADOPTS** the Report (ECF No. 46) and incorporates its findings and conclusions herein. Accordingly, the court **GRANTS** Defendants' motion for summary judgment (ECF No. 29) as to Plaintiff's § 1983 claim against Whitlock and as to any *Monell* claim for municipal liability under § 1983. Accordingly, the court **DENIES** Plaintiff's cross-motion for summary judgment (ECF No. 33) as to these same federal claims.

---

[5] Although not controlling, precedents from other circuits make clear that the use of intermediate force such as a taser against a person suspected of a minor crime who is fleeing on foot from a brief detention or stop in order to place the suspect under arrest is reasonable. *See, e.g., Jones v. Las Vegas Metro. Police Dept.*, 873 F.3d 1123, 1130 (9th Cir. 2017); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509–10 (6th Cir. 2012); *Soto v. Gaudett*, 862 F.3d 148, 158 (2nd Cir. 2017).

Furthermore, because the court has granted summary judgment as to all federal claims, the only claims that remain arise under state law. The court **ADOPTS** the magistrate judge's recommendation—to which Plaintiff does not object—that the court decline to exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the court **DENIES as moot** Plaintiff's summary judgment motion to the extent it applies to his state law claims, (ECF No. 33). Plaintiff's state law claims are hereby **REMANDED** to the Greenville County Court of Common Pleas.

**IT IS SO ORDERED.**

/s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
August 29, 2025